**RAM PETROLEUMS, INC., Plaintiff,**

v.

**Cecil ANDRUS, Secretary of the Interior of the United States of America, Edward W. Stuebing and Douglas E. Henriques, Administrative Judges of the Interior Board of Land Appeals, Defendants.**

Civ. No. 79–0005 BRT.

United States District Court, D. Nevada.

Oct. 25, 1979.

McDonald, Carano, Wilson, Bergin, Bible, Frankovich & Hicks, John J. Frankovich, Reno, Nev., Head, Moye, Carver & Ray, Craig R. Carver, Denver, Colo., for plaintiff.

B. Mahlon Brown, U. S. Atty., Shirley Smith, Asst. U. S. Atty., Reno, Nev., for defendants.

## ORDER

BRUCE R. THOMPSON, District Judge.

This case seeks review of a decision of the Interior Board of Land Appeals (IBLA) denying the plaintiff's petition for reinstatement of terminated oil and gas leases. 30 U.S.C. § 188. The matter is before the Court on the government's motion alternatively to dismiss or for judgment on the pleadings and the plaintiff's cross motion for summary judgment.

The plaintiff, Ram Petroleums, Inc., formerly held a number of oil and gas leases on public lands lying in Nevada.[1] Those leases terminated automatically when the Bureau of Land Management (BLM) did not receive the annual rentals on the day they fell due. See 30 U.S.C. § 188(b). Ram then sought administrative reinstatement of its leases pursuant to 30 U.S.C. § 188(c). That statute authorizes the Secretary of the Interior to reinstate automatically terminated leases if the required rental is tendered within twenty days of termination,

---

1. Those leases, which form the subject matter of this suit, may be identified by the following BLM parcel numbers: N–12775 through N– 12778, inclusive; N–12780 through N–12793, inclusive; and N–12871.

together with a petition demonstrating that the lessor's delinquency was either not due to a lack of reasonable diligence or justifiable.[2] Although timely, Ram's petition was denied by the Acting Chief of Lands and Mineral Operations of the BLM. His decision was affirmed on appeal to the IBLA.

Ram contends that the Secretary's rejection of its proffered excuse was arbitrary and capricious, amounting to an abuse of discretion. The excuse offered in its petition, as set forth in the IBLA decision, is as follows:

"Appellants [plaintiff here] expound at length on appeal as to the extenuating circumstances which they assert justify reinstatement. A particular employee who was responsible for mailing rental checks on their leases in this area and who had satisfactorily performed the required procedures in the past, in this instance failed, for whatever reason, to take the required measures to send in the rental payments in good time. The employee's supervisor specifically inquired whether the payment had been made and she responded they had been paid, when in fact they had not. Later, a similar inquiry by the corporation's president evoked the same untrue response. Appellants allege that this inquiry was made of the employee sufficiently in advance of the rental due dates so that timely payment could still have been made if the

employee had responded truthfully that she had not performed her duties. Appellants point out that they have no control over the veracity of their employees. Appellants argue, in essence, that they had done all they could under the circumstances to comply with the regulations, and that they had acted in a way that satisfies one or both of the criteria for reinstatement."

No hearing was held on Ram's petition and the government does not now contest its veracity. The sole question before the Court is the legal one of whether the Secretary, acting through the IBLA, abused its discretion in concluding that employee error and mendacity do not make a tardy rental payment excusable as being either "not due to a lack of reasonable diligence" or "justifiable."

 At the outset, it should be noted that the government's challenge to the jurisdiction of this Court is unavailing. Whatever the merits of the government's argument with respect to 28 U.S.C. § 1361, jurisdiction clearly lies under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* "There is . . . a presumption of judicial review under the APA unless there is clear and convincing evidence that Congress intended to foreclose review of a final agency action either by a specific statute or by committing action to agency discretion." *Standard Oil Co. of California v. F.T.C.,* 596

2. "Where any lease has been or is hereafter terminated automatically by operation of law under this section for failure to pay on or before the anniversary date the full amount of rental due, but such rental was paid on or tendered within twenty days thereafter, and it is shown to the satisfaction of the Secretary of the Interior that such failure was either justifiable or not due to a lack of reasonable diligence on the part of the lessee, the Secretary may reinstate the lease if—

(1) a petition for reinstatement, together with the required rental, including back rental accruing from the date of termination of the lease, is filed with the Secretary; and

(2) no valid lease has been issued affecting any of the lands covered by the terminated lease prior to the filing of said petition. The Secretary shall not issue any new lease affecting any of the lands covered by such terminated lease for a reasonable period, as determined in accordance with regulations

issued by him. In any case where a reinstatement of a terminated lease is granted under this subsection and the Secretary finds that the reinstatement of such lease will not afford the lessee a reasonable opportunity to continue operations under the lease, the Secretary may, at his discretion, extend the term of such lease for such period as he deems reasonable: Provided, That (A) such extension shall not exceed a period equivalent to the time beginning when the lessee knew or should have known of the termination and ending on the date the Secretary grants such petition; (B) such extension shall not exceed a period equal to the unexpired portion of the lease or any extension thereof remaining at the date of termination; and (C) when the reinstatement occurs after the expiration of the term or extension thereof the lease may be extended from the date the Secretary grants the petition."

F.2d 1381, 1384 (9th Cir. 1979). Although a given action may involve the exercise of agency discretion, it remains reviewable except "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971) (citation omitted).

■ No statute specifically prohibits judicial review of decisions denying reinstatement of terminated oil and gas leases. To the contrary, 30 U.S.C. § 226–2 which prescribes the time for commencement of actions contesting decision of the Secretary involving oil and gas leases strongly suggests that judicial review is intended. *Maisano v. Morton*, Civ.No. 38720 (E.D. Mich., filed October 12, 1973); cf. *Samuel v. Morton*, Civ.No. 74–1112–EC (C.D.Cal., filed Aug. 26, 1974). In providing that it must be shown "to the satisfaction of the Secretary" that the default was not due to a lack of reasonable diligence or was otherwise justifiable, section 188(c) vests the Secretary with a measure of discretion in acting on reinstatement petitions. From this it does not follow, however, that the statute is drawn in such broad terms that courts are left no standard by which to measure the lawfulness of the agency's action. The statute itself erects certain standards when it conditions reinstatement on a showing by the petitioner that the default was "not due to a lack of reasonable diligence" or "justifiable." The legislative history, implementing regulations and judicial and administrative decisions all lend added meaning to those standards. Plainly there is "law to apply" and jurisdiction thus exists under the APA. Accord *Santor v. Morton*, 383 F.Supp. 1265 (D.Wyo.1974); *Maisano v. Morton*, supra.

■ The IBLA took the position in this case that Ram's failure to have paid the rentals on the date due could only have been shown to have been "not due to a lack of reasonable diligence" had Ram shown

that the payments had been mailed three days before they fell due. *Ram Petroleums, Inc. and Ramoco, Inc.*, 37 IBLA 184, 186 (1978); see 43 C.F.R. 3108.2–1(c)(2). It also rejected Ram's claim that the delay was "justifiable" for the reason that employee error and dishonesty do not constitute circumstances beyond the lessee's control. *Ram Petroleums, Inc. and Ramoco, Inc.*, 37 IBLA at 186–87. Such a niggardly interpretation of section 188(c) runs clearly contrary to congressional intent and cannot stand.[3]

Section 188 has been amended several times since its original enactment as section 31 of the Mineral Leasing Act of 1920. Prior to 1954 the failure of an oil and gas lessee to pay the annual rental when due did not terminate the lease. Even if the lessee wished to abandon the lease and attempted to do so by not paying the rentals, the lease did not terminate and rentals continued to accrue. The absence of forfeiture provisions was at odds with prevailing state and private practice. As a result, there were a number of lessees who were unaware of the substantial liabilities that were accruing in favor of the federal government. At the same time, the federal policy in favor of encouraging exploration and development was being thwarted by uncertainty as to which lands were available for leasing. H.R.Rep.No.2238, 83d Cong., 2d Sess., *reprinted in* [1954] U.S.Code Cong. & Admin.News, pp. 2695, 2701; see S.Rep.No.2165, 87th Cong., 2d Sess., *reprinted in* [1962] U.S.Code Cong. & Admin.News, pp. 3236, 3237. Accordingly, section 188 was amended to provide for automatic termination upon failure to pay the rentals by the date due. Pub.L. 83–555, 68 Stat. 585.

The 1954 amendments made no provision for administrative reinstatement of terminated leases, and the Department of the Interior took the position that it was powerless to grant such relief. This led to inequitable results, particularly in cases in which the delay was short, the default inadver-

---

**3.** In its brief the government represents that the "reasoning behind these [IBLA] decisions has been affirmed in several cases," citing two unpublished decisions, *Samuel v. Morton* and *Maisano v. Morton*. Inasmuch as copies of those decisions were not appended, copies were requested of the government attorney. *Samuel v. Morton* was dismissed on the grounds that the suit was not timely under 30 U.S.C. § 226–1.

tent, or the payment timely but nominally deficient. Congress quickly found itself inundated with private relief bills seeking reinstatement of terminated leases. In 1962 section 188 was again amended to grant the Secretary authority to reinstate terminated leases, but the amendment only applied to leases terminated before the date of its passage. Pub.L. 87–822, 76 Stat. 943; see S.Rep.No.2165, 87th Cong., 2d Sess., *reprinted in* [1962] U.S.Code Cong. & Admin. News, p. 3236.

The problems which led to the adoption of the 1962 amendments persisted. Legislation granting the Secretary authority to grant reinstatement as to future terminations passed both the Senate and the House in 1967, but the differences among the various bills were never resolved by committee. S.R. 1367, 90th Cong., 1st Sess. (1967); H.R. 7915 and H.R. 7940, 90th Cong., 1st Sess. (1970). In 1970, section 188 was finally amended to its present form, granting the Secretary prospective authority to reinstate terminated leases if the default is found not to have been due to a lack of reasonable diligence or justifiable. Pub.L. 91–245, 84 Stat. 206. The stated purpose of these amendments is to "enable the Secretary to do equity and [to] obviate the need for Congress to continue to consider many private bills for the relief of individual lessees." H.R.Rep.No.91–1005, 91st Cong., 1st Sess., *reprinted in* [1970] U.S.Code Cong. & Admin.News, p. 3002. By requiring the petition for reinstatement to be filed within twenty days of termination, the need for certainty as to the status of federal oil and gas leases which prompted the 1954 amendments to section 188 in the beginning was also fulfilled. See generally *Reinstatement of Oil and Gas Leases: Hearings on H.R. 7915 and H.R. 7940 Before the Subcomm. on Mines and Mining of the House Comm. on Interior and Insular Affairs*, 90th Cong., 1st Sess. (1967) (remarks of Mr. Cavanaugh).

The kinds of situations that Congress intended to remedy with the passage of the 1970 amendments to section 188 find frequent illustration in the legislative proceedings regarding the various private laws that had been passed reinstating terminated oil and gas leases. The situation of Elwyn C. Hale, Oil and Gas Lease Las Cruces 06310, Private Law 90–294, is almost squarely on point with that outlined in Ram's petition. The anniversary date of Mr. Hale's lease was April 30, 1965. The rental payment was not made until May 10, 1965. His explanation for the late payment was as follows:

"In April of this year, I began arrangements to drill a new well on the property. I obtained the necessary drilling bonds and the necessary permits from the owners of the potash rights in the surface and from the Bureau of Land Management. Drilling operations were commenced on April 29, 1965 and I have expended $8,974.37 on the drilling operations since that time. When drilling operations are commenced, the term of the lease is automatically extended to 2 years. While I was in New Mexico arranging the necessary permits and getting the drilling operations underway, the due date for advance rental payment (May 1) came up. As is customary when I am away, all routine business operations are carried on by my secretary who occupies my office with me. My present secretary had only been with me a couple of months, and misunderstood my instructions and the lease and assumed that the commencement of drilling operations was all that was necessary to keep the lease in effect. Unfortunately, the annual rental payment of $250 was overlooked."

*Reprinted as an appendix to* S.Rep.No.91–205, 91st Cong., 1st Sess. (1969), Serial Set 12834–1. If anything, Ram's position is stronger than Mr. Hale's, for according to the petition filed on its behalf, the employee was expressly asked if she had made the required payments and assured her employer that she had.

During argument the government attorney was questioned as to the policy reasons for the position taken by the IBLA in this case. Inasmuch as the need for certainty as to the status of oil and gas leases is amply served by the twenty-day time limitation on the filing of petitions for reinstatement, none could be adduced. In light of the clear congressional intention to

provide relief in the very type of situation now before this Court, the conclusion that the denial of Ram's petition by the IBLA constitutes an abuse of discretion is inescapable.

In consideration of the premises,

*IT HEREBY IS ORDERED* that the government's motion for judgment on the pleadings or dismissal be, and it hereby is, denied.

*IT FURTHER IS ORDERED* that the plaintiff's motion for summary judgment be, and it hereby is, granted.

The case is remanded to the Department of the Interior with instructions to reinstate the plaintiff's leases upon payment of the rentals due.