658 F.2d 1349
 RAM PETROLEUMS, INC., Plaintiff-Appellee,
v.
Cecil ANDRUS, Secretary of the Interior of the United States
of America; Edward W. Stuebing and Douglas E. Henriques,
Administrative Judges of the Interior Board of Land Appeals,
Defendants-Appellants.
 No. 79-4886.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 10, 1981.
Decided Oct. 13, 1981.
 
 David C. Shilton, Washington, D. C., for defendants-appellants.
 Craig R. Carver, Head, Moye, Carver & Ray, Denver, Colo., argued, for plaintiff-appellee; John J. Frankovich, McDonald, Carano, Wilson, Bergin, Bibe, Frankovich & Hicks, Reno, Nev., on brief.
 Appeal from the United States District Court for the District of Nevada.
 Before SNEED, FLETCHER and POOLE, Circuit Judges.
 SNEED, Circuit Judge:
 
 
 1
 This is an appeal from a district court order reversing a finding of the Board of Land Appeals of the Department of the Interior ("IBLA" or "Board") that the appellee, Ram, failed to exercise reasonable diligence and thus caused its lease to lapse, when the rental payments for the leases arrived five days late. Jurisdiction was based on Title 28 U.S.C. § 1291 (1976). We reverse the district court order, and reinstate the Board's determination.
 
 I.
 FACTS
 
 2
 This case was brought by Ram as a challenge to the Board's refusal to reinstate nineteen oil and gas leases which were automatically terminated by operation of law, 30 U.S.C. § 188, when annual rentals were not received on time by the Nevada Office of the Bureau of Land Management (BLM).
 
 
 3
 Ram petitioned for reinstatement under 30 U.S.C. § 188(c) (1976), which provides that the Secretary of the Interior may reinstate such terminated leases when he is satisfied that the failure to make timely payment was "either justifiable or not due to a lack of reasonable diligence," provided that a petition is filed, together with the rental amount due, within 20 days of termination, and that no subsequent lease has been issued.
 
 
 4
 What constitutes either "reasonable diligence" or a "justifiable" delay is nowhere explained in the Act. Regulations have been promulgated, however, defining "reasonable diligence" as normally requiring the mailing of payment sufficiently in advance of the due date to account for normal delays in the collection, transmittal and delivery of the payment. See 43 C.F.R. § 3108.2-1(c)(2). The regulations put the burden to show compliance with section 188(c) on the lessee. Although no regulations defining "justifiable" delay have been promulgated, the Board has consistently held that delay is "justifiable" within the meaning of section 188(c) only if "sufficiently extenuating circumstances" are present "so as to affect the lessee's actions." Factors outside the lessee's control must have arisen which prevented the lessee from meeting the objective reasonable diligence test. Louis Samuel, 8 IBLA 268, 274 (1972); see also, Phillips Petroleum Co., 29 IBLA 114 (1977); Samuel Testagrossa, 25 IBLA 64 (1976); Monturah Co., 10 IBLA 347 (1973).
 
 
 5
 Ram's petition was denied by the BLM and that decision was affirmed on appeal to the Board even though Ram contended that the delay was justifiable in that "sufficiently extenuating" circumstances existed in its case. In support, two corporate executives submitted affidavits in which they alleged that the employee charged with responsibility for payment of lease rentals had failed to issue and mail the required checks until June 30, 1977, despite her oral assurances in early June and on June 27, that such payments had been made. Since this employee had satisfactorily performed the same task for other lease payments due January, 1977 through June, 1977, affiants asserted they had no reason to suspect that she either would fail to pay July rentals on time or would assure them falsely that payments had been made. Ram's petition concluded that Ram had exercised reasonable diligence by making an inquiry of its employee prior to the due date. The petition also stated that the failure to pay on time was justifiable in that the false statements of the employee were outside the company's control.
 
 
 6
 The Board found these circumstances insufficient to warrant reinstatement on either the reasonable diligence or the justifiable delay test. It held appellee did not meet the reasonable diligence test because remittance was not mailed until the day before the due date and, thus, insufficient time was allowed to account for normal mail delays. Moreover, the Board determined that the late payment was not justifiable because appellee bore the responsibility for and the consequences of its employees' actions. Shell Oil Company, 30 IBLA 290, 293-94 (1977); Phillips Petroleum Company, 29 IBLA 114 (1977); Samuel Testagrossa, 25 IBLA 64 (1976); Monturah Co., 10 IBLA 347 (1973). Further, late payment could have been avoided if appellee had taken additional steps to insure timely remittance such as a simple check of the account records. See Ram Petroleums, Inc., 37 IBLA 184, 187 (1978).
 
 
 7
 Appellee sought review of the Board's decision in the United States District Court for the District of Nevada. Although some factual dispute exists over whether appellee's employee intentionally lied or merely misunderstood what was asked of her, the Board indicated that its decision would not have differed even granting that appellee's employee intentionally lied. The district court granted Ram's summary judgment motion and ordered the BLM to reinstate its lease as soon as back rental was paid. Ram Petroleums, Inc. v. Andrus, 478 F.Supp. 1165 (D.Nev.1979).
 
 
 8
 The district court based its decision on an interpretation of the legislative history of the 1970 amendments to section 188 which gave the Secretary of the Interior discretionary power to reinstate terminated leases. As the court read that history, Congress intended to provide relief "in the very type of situation now before this court," where late payments resulted from an employee's error, mendacity, or both, and no fraud was suspected. Since the government had not offered reasons sufficient to justify denial of reinstatement in appellee's case, the district court concluded the Board had abused its discretion.
 
 
 9
 We hold that the district court erred. It misread the legislative history and improperly concluded that the Board abused its discretion. We shall examine that history in the course of ascertaining the intent of Congress in enacting the 1970 Amendment of section 188(c) and thereafter explain why we believe the Board did not abuse its discretion.
 
 II.
 THE INTENT OF CONGRESS
 
 10
 We begin with the words of the statute. See American Textile Mfrs. Inst. v. Donovan, --- U.S. ----, 101 S.Ct. 2478, 69 L.Ed.2d 185 (1981); Reiter v. Sonotone Corp., 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979). Subsections 188(b)(1), (b)(2) and (c) are set forth in the margin.[1] Immediately it is apparent that under the conditions described in sections 188(b)(1) and (b)(2) automatic termination is precluded, while under section 188(c) the "Secretary may reinstate the lease" (italics added) under certain circumstances. The permissive "may" allows the Secretary to reinstate certain leases terminated for untimely payment but does not require him to do so. See Burglin v. Morton, 527 F.2d 486, 488 (9th Cir.), cert. denied, 425 U.S. 973, 96 S.Ct. 2171, 48 L.Ed.2d 796 (1976) (interpreting 30 U.S.C. § 226(a)).
 
 
 11
 To understand the setting within which the language of section 188(c) evolved it is necessary to start with the original enactment in 1920 of the Mineral Leasing Act, 30 U.S.C. § 188. As originally enacted section 188 read as follows:
 
 
 12
 That any lease issued under the provisions of this Act may be forfeited and canceled by an appropriate proceeding in the United States district court for the district in which the property, or some part thereof, is located whenever the lessee fails to comply with any of the provisions of this Act, of the lease, or of the general regulations promulgated under this Act and in force at the date of the lease; and the lease may provide for resort to appropriate methods for the settlement of disputes or for remedies for breach of specified conditions thereof.
 
 
 13
 Mineral Leasing Act of 1920, c. 85, § 31, 41 Stat. 450 (1920).
 
 
 14
 It has undergone several changes since its enactment.
 
 
 15
 Prior to 1954, the nonpayment of annual rental did not result in lease termination. Rather, title remained with the lessee; he remained liable for the full term rental even if he had intentionally failed to make payment in the mistaken belief that his lease would thus terminate. Confusion in lease titles consequently resulted. See H.R.Rep. No. 91-1005, 91st Cong., 2d Sess., reprinted in (1970) U.S.Code & Ad.News 3002-03. In order to insure integrity of federal oil and gas leases, Congress amended the Act in 1954 to provide for automatic termination upon failure to pay rent on or before the lease's termination date. See Act of July 29, 1954, Pub.L. No. 555, 68 Stat. 585. Under this amendment, the failure to make full timely payment was fatal, even if the amount paid was deficient by a few cents or payment arrived late because of a breakdown in mail delivery. See (1970) U.S.Code Cong. & Cong. Ad.News at 3003-04; S.Rep. No. 91-205, 91st Cong., 1st Sess. 2 (1969). The Secretary of the Interior determined that the statutory mandate was absolute and that he was powerless to reinstate leases thus terminated. Inevitably, Congress was faced with the task of enacting numerous private bills enabling the Secretary to reinstate leases in situations where equity clearly warranted relief. Id.
 
 
 16
 In 1962, Congress again amended the Act so as to enable the Secretary to grant retrospective relief for leases terminated between 1954 and 1962 when he was satisfied that the failure to make full timely payment was justifiable or not due to a lack of reasonable diligence. See S.Rep. No. 2165, 87th Cong., 2d Sess., reprinted in (1962) U.S.Code Cong. & Ad.News 3236. However, post-1962 leases were still subject to automatic termination, sometimes because of circumstances within the lessee's control, such as inadvertent remittance of insufficient rent or late mailing, and sometimes because of circumstances beyond his control, such as arithmetical errors in the BLM's billing. See (1970) U.S.Code Cong. & Ad.News at 3002-03. The need for congressional relief in the form of private laws thus continued. See, e. g., Summary of Private Laws on Oil and Gas Termination Leases, S.Rep. No. 205, supra, at 8-11.
 
 
 17
 In order to "obviate the need for Congress to continue to consider many private bills" and "enable the Secretary to do equity," Congress amended 30 U.S.C. § 188 in 1970 to its present form. Pub.L. No. 91-245, 84 Stat. 206 (1970). Little discretion was given to the Secretary under section 188(b) which covers cases in which payments are remitted on time but are nominally deficient, generally due to government error. Congress deemed automatic termination unduly harsh in such situations.
 
 
 18
 In contrast, Congress directed the Secretary to scrutinize petitions closely under subsection 188(c) and grant reinstatement only upon a showing of merit sufficient to satisfy him that late payment was either justifiable or not due to a lack of reasonable diligence. Congress expressed great concern that unscrupulous lessees might attempt to use this provision to avoid payment while engaging in oil and gas speculation:
 
 
 19
 The Committee expects the Secretary of the Interior to examine carefully each petition for reinstatement and to adjudicate favorably only those cases where it is clearly shown that failure was, as indicated above, either justifiable or not due to a lack of reasonable diligence. The Committee is fully aware of the advantage that could result from 'intentional' mistakes whereby unethical operators could knowingly underpay or submit rentals late and thereby gain additional time while an oilfield 'play' is developing. However, S. 1193 as amended provides the Secretary with ample authority to determine the merits of each petition for reinstatement, and reinstatement need not be made until the Secretary is fully satisfied.
 
 
 20
 (1970) U.S.Code Cong. & Ad.News at 3005.[2]
 
 
 21
 The discretion of the Secretary to grant or deny reinstatement is not unlimited, however. The Secretary may not reinstate if a valid lease has intervened or if payment and a petition are not tendered within the times provided. Moreover, the Secretary may not reinstate unless satisfied that the failure to pay rentals was either justifiable or not due to a lack of reasonable diligence. To compel him to reinstate it must be shown that his refusal to be satisfied that the failure was either justifiable or not due to a lack of reasonable diligence is arbitrary, capricious, and an abuse of discretion within the meaning of the Administrative Procedures Act, 5 U.S.C. § 706.
 
 
 22
 Appellee argues that Congress intended to restrict the Secretary's discretion to an even greater extent. Specifically, Ram argues that Congress intended to incorporate the result of a private bill enacted in 1968 for the benefit of Elwyn C. Hale, Private Law No. 90-294, 82 Stat. 1409 (1968), whose failure to make rental payments was because his secretary misunderstood his instructions and assumed that his commencement of drilling operations was all that was necessary to prevent a forfeiture of the lease. While it is true that the Hale situation is referred to in S.Rep. No. 91-205, 91st Cong., 1st Sess. (1969), and this report states that the purpose of subsection 188(c) is to provide the Secretary with the authority to handle situations such as Hale's administratively, it does not follow that Congress intended that the Secretary must grant reinstatement of forfeited leases in all situations similar to Hale's. The Hale situation is a species within a genus to which subsections 188(b) and (c) are directed. The Secretary within the limits indicated was intended to have broad discretion in determining whether reinstatement is appropriate. His regulations reflect this view. 43 C.F.R. § 3108.2-1(c)(4). They are entitled to considerable deference. See Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965).III.
 
 THE ABUSE OF DISCRETION ISSUE
 
 23
 It is the appellee's position that even if reinstatement was not required by the statute construed in accordance with the intent of Congress, it was arbitrary and capricious for the Board to refuse to reinstate under the circumstances of this case. Specifically, appellee asserts the Board acted arbitrarily by requiring, in effect, mailing at least three days in advance of the due date and by applying respondeat superior to impute to it the misdeeds of its employee. Support for this position exists, appellee asserts, in the conclusion of the district court that the requirement of payment of rentals within twenty days of forfeiture removes all proper reasons for a refusal to reinstate.
 
 
 24
 The Secretary, on the other hand, offers in justification of the Board's action two reasons based on administrative efficiency and a third that rests on principles of equity. The first two are: (1) excuses based on employee misconduct and other factors within a lessee-employer's control are easily manufactured and, thus, likely to be used by lessees whose failure to pay is either not justifiable or due to a lack of reasonable diligence; (2) affording relief in situations in which the failure to pay was due to circumstances within the control of the lessee would reduce the incentives for lessees to develop internal procedures that will insure timely payment. The third reason is that to provide reinstatement when an employee of the lessee is responsible for forfeiture, and not when the lessee is solely responsible, discriminates against those who have no employees on whom to place the blame for the failure to make timely payments.
 
 
 25
 We cannot say that these are spurious reasons which reveal the arbitrariness and capriciousness of the Board's refusal to reinstate in this case. Moreover, we cannot accept the district court's conclusion that the twenty day provision undercuts the validity of these reasons. So long as it is granted, as we think it must be, that Congress intended for payments to be made on the due date and not twenty days thereafter, then so also are the Secretary's reasons sufficiently valid to shield the Board's action in this case from the charges of arbitrariness.
 
 
 26
 Finally, the appellee argues that arbitrariness is revealed by inconsistency in the Board's application of the statute. In particular appellee points to Great Basins Petroleum Co., 24 IBLA 117 (1976), in which a lease was reinstated where the failure to pay on time was caused by the company's president believing that a well on the lease would be producing on the due date. The well, the Secretary later determined, was not a producer at the relevant time. The previously mentioned Hale case also involved a situation similar to Great Basins. These cases are distinguishable from the case before us. Appellee does not allege that substantial exploration costs have been incurred.
 
 
 27
 That we can distinguish Great Basins, however, is not controlling. Congress gave the Secretary discretion. The issue is whether he abused that discretion. 5 U.S.C. § 706(2)(A). We hold that he did not. See Ballard E. Spencer Trust, Inc. v. Morton, 544 F.2d 1067, 1070 (10th Cir. 1976). To find that the rules have been abused requires more than a showing of several perhaps aberrational instances of its exercise. We should intervene only when we are convinced that its exercise has broken the chain that binds it to the purposes Congress intended the discretionary power to serve. No such break exists in this case.
 
 
 28
 The district court is reversed, and the Board's determination is reinstated.
 
 
 29
 REVERSED.
 
 
 
 [1]
 (b) .. upon failure of a lessee to pay rental on or before the anniversary date of the lease, for any lease on which there is no well capable of producing oil or gas in paying quantities, the lease shall automatically terminate by operation of law ... Provided, That if the rental payment due under a lease is paid on or before the anniversary date but either (1) the amount of the payment has been or is hereafter deficient and the deficiency is nominal, as determined by the Secretary by regulation, or (2) the payment was calculated in accordance with the acreage figure stated in the lease, or in any decision affecting the lease, or made in accordance with a bill or decision which has been rendered by him and such figure, bill, or decision is found to be in error resulting in a deficiency, such lease shall not automatically terminate
 (c) Where any lease has been or is hereafter terminated automatically by operation of law under this section for failure to pay on or before the anniversary date the full amount of rental due, but such rental was paid on or tendered within twenty days, thereafter, and it is shown to the satisfaction of the Secretary of the Interior that such failure was either justifiable or not due to a lack of reasonable diligence on the part of the lessee, the Secretary may reinstate the lease if
 (1) a petition for reinstatement, together with the required rental, including back rental ... is filed with the Secretary; and,
 (2) no valid lease has been issued ... prior to the filing of said petition....
 30 U.S.C. § 188(b) and (c) (1976) (italics added).
 
 
 [2]
 See also S.Rep. No. 91-205, supra at 3-4 (20 day limit on filing of reinstatement petition included in order to inhibit unethical lessees from deliberately failing to remit payment until interested lease applicants become known and then obtaining reinstatement in order to assign leases to such applicants at inflated prices)