F I L E D
United States Court of Appeals
Tenth Circuit

JAN 27 1999

PATRICK FISHER
Clerk

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

5M, INC.,

        Defendant-Appellant.

No. 97-4188
(D.C. No. 96-CV-632)
(District of Utah)

ORDER AND JUDGMENT*

Before **BRORBY**, Circuit Judge, **BRISCOE**, Circuit Judge, and **McWILLIAMS**, Senior Circuit Judge.

On July 19, 1996, the United States filed an action in the United States District Court for the District of Utah against 5M, Inc., a Utah corporation. In its complaint the United States sought cancellation of certain coal leases on federally owned land in Kane County, Utah, which leases had been entered into by the United States with parties who later assigned their interest to 5M. The ground for the cancellation was the failure of 5M to make rental payments as required by the lease agreements. Jurisdiction was based on

_____

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3

28 U.S.C. § 1345 and the Mineral Leasing Act of 1920, 30 U.S.C. § 181, *et seq.,* specifically 30 U.S.C. §188(a) and 43 C.F.R. §§ 3452.2-1 to 2-2.

After answer, which, incidentally, is not in the record on appeal, the United States on September 12, 1996, filed a motion for judgment on the pleadings or, in the alternative, for summary judgment, stating that "[e]ven if everything alleged by the defendant were true, the United States would be entitled to judgment in its favor." In support of that motion, the United States filed a brief to which certain exhibits were attached. 5M then filed on October 14, 1996 a motion to amend its answer and attached thereto a proposed amended answer. In that answer 5M alleged, *inter alia,* that the action was barred by its tender on October 14, 1996 of full payment of unpaid rentals, which tender was not accepted by the United States, and that the action was also barred on the grounds of waiver and estoppel by virtue of "the fact that the Bureau of Land Management has allowed numerous lease agreements to go into default in the State of Utah but has never before, to the best of Defendant's knowledge, sued for cancellation, to the detriment of the Defendant who has spent hundreds of thousands of dollars developing the coal leases." 5M also filed at the same time a motion for summary judgment in its favor on the ground that its tender of all rent due under the leases cured any default. 5M also submitted a brief in opposition to the United States' motion and in support of its own motion for summary judgment. The United States then filed a

response to 5M's motion, and 5M filed its reply thereto, supported by several affidavits.[1]

On September 25, 1997, the district court, after hearing, granted defendant's motion to amend its answer, but denied its motion for summary judgment. At the same time, the district court granted the United States' motion for summary judgment and canceled the leases in question. On October 6, 1997, 5M filed a motion for reconsideration or for new trial on the ground that it had discovered "new evidence in the form of an affidavit of Jerry Glazier and has moved the court to amend its answer to include counterclaims against plaintiff." That motion was supported by a brief and the affidavit of Jerry Glazier.[2] On October 20, 1997, the district court, by order, denied that motion. This appeal follows.

Some background is in order. The leases here involved expressly reserved to the United States the right to waive any breach of the leases, but provided that any such waiver would extend only to the particular breach waived and would not limit the United States as to any future breach. Specifically, Section 3(e) of the leases reads as follows:

---

[1]It would appear that one of the affiants was Jerry Glazier, president of 5M. In his affidavit, which was filed on November 4, 1996, Glazier stated that prior to the filing of the present action 5M had paid the United States $213,752.48 in lease payments on the coal leases with which we are here concerned, that 5M had put up a cash bond in the amount of $80,000.00 as security for payment of the lease rental, and that 5M had spent $5,000,000.00 in developing "these and other coal leases." Another affiant stated that the United States in the past had consistently accepted past due lease rental payments..

[2]In that affidavit Glazier stated that on February 21, 1995, a representative of the Utah office of the Bureau of Land Management angrily refused to allow 5M "to take the final steps necessary to complete permitting for coal mining operations and production."

Sec. 3.  The lessor expressly reserves:

. . . . .

*(e) Waiver of conditions.*  The right to waive any
breach of the conditions contained herein, *except* the breach
of such conditions as are required by the Act, but any such
waiver shall extend only to the particular breach so waived
and shall not limit the rights of the lessor with any future
breach; nor shall the waiver of a particular cause of forfeiture
prevent cancellation of this lease for any other cause, or for
the same cause occurring at another time.

Further, the leases allowed cancellation of the leases by judicial proceedings if

non-compliance with the lease provisions continued for 30 days after written notice.  In

this regard, Section 11 of the leases provided as follows:

Sec. 11.  PROCEEDINGS IN CASE OF DEFAULT - If
lessee fails to comply with applicable laws, existing
regulations, or the terms, conditions and stipulations of this
lease, and the noncompliance continues for 30 days after
written notice thereof, this lease shall be subject to
cancellation by the lessor only by judicial proceedings.  This
provision shall not be construed to prevent the exercise by
lessor of any other legal and equitable remedy, including
waiver of the default.  Any such remedy or waiver shall not
prevent later cancellation for the same default occurring at
any other time.

The record indicates that on February 24, 1995, the Bureau of Land Management

(BLM) notified 5M that payment of the delinquent rentals for the years 1993 and 1994

was required and that if payment was not received, treasury notes held as bond by the

Minerals Management Service would be forfeited.  The letter also informed 5M that after

collection of the monies, the matter would be referred to the Office of Solicitor with a

recommendation to cancel the leases.  5M appealed that decision to the Interior Board of

- 4 -

Land Appeals (IBLA), which has authority to make final decisions for the Secretary of the Interior, 5M claiming that it was unable to secure funding to develop the leases and thus could not make the rental payments. IBLA affirmed the decision of the BLM.

On October 26, 1995, the BLM referred 5M's leases, as well as other delinquent leases, to the Office of the Solicitor to seek judicial cancellation of 5M's leases. In turn, the matter was referred to the United States Attorney on November 2, 1995, who later brought the present action on July 19, 1996.

There is no dispute but that as of the date the present action was filed 5M was in default on its rental payments. However, 5M contends that its subsequent tender of all unpaid rentals cured its default and precluded cancellation. In this regard, the district court observed that "there's undisputed evidence that the defendant was in default over a long, long period of time," and rejected 5M's argument that its belated tender cured prior default and precluded cancellation.

We agree with the district court that under the clear terms of the leases here involved the United States was entitled to cancellation based on the undisputed failure of 5M to pay rentals for a period of several years in rather substantial amounts, and that the United States was not precluded from obtaining cancellation by 5M's tender made after filing of the cancellation action. *See generally Ramoco, Inc. v. Andrus,* 649 F. 2d 814

(10th Cir. 1981); *Ram Petroleums, Inc., v. Andrus,* 658 F.2d 1349 (9th Cir. 1981).[3]

Further, under the equally clear terms of the lease, waiver and estoppel are not available to 5M. Nor did the district court err in denying 5M's post trial motion to reconsider and allow it to amend its answer for a second time. In this latter connection the district court most certainly did not abuse its discretion. *Weese v. Schukman,* 98 F.3d 542, 549 (10th Cir. 1996).

Judgment affirmed.

SUBMITTED FOR THE COURT,


Robert H. McWilliams
Senior Circuit Judge

---

[3]*See also Russell v. Park City Utah Corp.,* 548 P.2d 889 (Utah 1976), which held that tender of unpaid rent was not made within a reasonable time and that lessors were justified in refusing the tender and terminating the lease.